IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES LEAR                                          :
                                                    :        CIVIL ACTION
            v.                                      :
                                                    :        NO. 16-1338
PHOENIXVILLE POLICE DEPT., ET. AL                   :

## MEMORANDUM

**SURRICK, J.**                                                    **MAY 5, 2017**

Presently before the Court is Defendant Shawn Michinock's Motion for Summary

Judgment (ECF No. 25), and Defendants Phoenixville Police Department, Borough of

Phoenixville, Chief William J. Mossman, Officer Nicholas Heller, and Officer Thomas Hyland's

Motion for Summary Judgment (ECF No. 26). For the following reasons, Defendants' Motions

will be granted.

## I.       BACKGROUND

In this civil rights action, Plaintiff James Lear asserts claims against Defendants under

§ 1983 and Pennsylvania law for malicious prosecution, selective enforcement, false arrest,

unreasonable search and seizure, and violations of his due process rights.

### A.       Factual Background[1]

In the early evening of April 11, 2014, Officer Nicholas Heller, while on his way to work

at the Phoenixville Police Department, stopped at a Wawa store in East Vincent Township.

(Heller Dep. 19, Phoenixville Mot. Ex. B., ECF No. 26.) While at the store, he observed

Plaintiff James Lear who was also in the store. (*Id.*) Heller observed Plaintiff exit the Wawa,

---

[1] We view all of the facts and draw all reasonable inferences therefrom in the light most
favorable to Plaintiff, the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852
(3d Cir. 2006).

and get into the driver's seat of a white Chevrolet Impala.  (*Id*.)  Plaintiff drove the car out of the Wawa parking lot.  (*Id*. at 19-20.)[2]  Heller entered his vehicle and followed Plaintiff to a traffic light.  (Heller Dep. 20.)  Heller was aware of the fact that Plaintiff had a suspended license and he wrote down the time and the license plate number of the car that Plaintiff was driving.  (*Id*.) When Heller reported for duty that evening, he checked the online database and confirmed that Plaintiff had a suspended license.  (*Id*.)  He then made a print out of Plaintiff's driver's license information.  (*Id*.)  Since Heller is a police officer with the Phoenixville Police Department, and he observed Plaintiff driving in East Vincent Township, he reported the incident to Officer Shawn Michinock of the East Vincent Township Police Department.  (*Id*.)

 After receiving this information, Officer Michinock personally confirmed that Plaintiff's driver's license was suspended by reviewing the PennDOT records.  (Michinock Dep. 20, Phoenixville Mot. Ex. D.)[3]  Michinock then filed an incident report and wrote up a citation related to this matter.  (Michinock Dep. 34.)  The citation and incident report were filed with the Magisterial District Court.  (*Id*. at 37.)  On the incident report, Michinock listed Plaintiff's address as 800 Kimberton Road, P.O. Box 674, Phoenixville, PA 19460.  (*Id*. at 31.)  Michinock got this address from Plaintiff's PennDOT records.  (*Id*.)  Plaintiff testified that he notified PennDOT of his change of address from 7 Amy Court to 1050 West Bridge Street either right before or right after Officer Heller saw him driving without a license.  (Lear Dep. 73-74.) Plaintiff never received the citation.  (*Id*. at 52.)

---

[2] Plaintiff testified that had a suspended license in April 2014 (Lear Dep. 12, Phoenixville Mot. Ex. E), and he drove without a license "on occasion[]" between April and May 2014 (*id*. at 12, 42-43).  However, Plaintiff does not specifically remember whether he drove without a license on April 11, 2014.  (*Id*. at 42-43.)

[3] Plaintiff's driver's license was suspended from 2009 until 2015.  (Lear Dep. 12.)

On April 16, 2014, the District Court issued a Certified Summons to Plaintiff for a hearing with respect to the citation. (Traffic Docket 3, Pl.'s Resp. Ex. K., ECF No. 29.) On April 28, 2014, the Summons was returned to the court as undeliverable. (*Id*.) Plaintiff did not appear for the hearing. (Heller Dep. 43.) The hearing was held before Magisterial District Judge James Deangelo. (*Id*.) Heller was subpoenaed to testify at the hearing. (*Id*.) Plaintiff was found guilty at the hearing, and the court issued a bench warrant for Plaintiff. (*Id*.)

On May 27, 2014, Phoenixville Police Officer Thomas Hyland arrested Plaintiff pursuant to the bench warrant. (Hyland Dep. 12, Phoenixville Mot. Ex. C.) Hyland had knowledge of the bench warrant because Heller had informed him about the warrant after the hearing. (*Id*. at 28.) While on duty, Hyland observed Plaintiff standing outside of a house in North Phoenixville. (*Id*. at 29.) Hyland recognized Plaintiff because he had previously had conversations with Plaintiff, and knew that Plaintiff had previously been arrested and convicted for dealing drugs. (*Id*. at 13-15.) After verifying the bench warrant, Hyland approached Plaintiff and told him that he was under arrest. (*Id*. at 32.) Plaintiff acted confused. (Lear Dep. 46-47.) Hyland instructed Plaintiff to get on the ground. (Hyland Dep. 32.) Plaintiff complied with Hyland's instructions. (*Id*.) Hyland then put Plaintiff in handcuffs and conducted a pat-down of Plaintiff. (*Id*.) Hyland told Plaintiff that he was being arrested for a traffic violation, on which he had been found guilty. (*Id*. at 38.) Plaintiff was not aware of such a violation. (Lear Dep. 52.) Before placing Plaintiff in the patrol car, Hyland asked Plaintiff if he was carrying any weapons or anything illegal on his person. (Hyland Dep. 38.) Plaintiff responded "no." (Lear Dep. 47.)[4] Hyland did not provide any Miranda warnings to Plaintiff. (Hyland. Dep. 37.) Hyland then drove Plaintiff to the Phoenixville police station. (*Id*. at 32.)

---

[4] Defendants dispute this fact. Defendant Hyland stated that Plaintiff did not respond to his question, and instead hung his head and sighed. (Hyland Dep. 37.)

Once at the police station, Hyland took Plaintiff to the processing area. (*Id*. at 39.)

Hyland documented Plaintiff's property, which included a large amount of cash, specifically

$1,135, and two cell phones. (*Id*. at 51; Evidence Information, Michinock Mot. Ex. D, ECF No.

25.) Hyland sought approval from his supervisor, Sergeant Sutton, to conduct a strip search of

Plaintiff. (Hyland Dep. 42.) Hyland believed that he had probable cause to strip search Plaintiff

for the following reasons: (1) Plaintiff had a prior criminal history as a drug dealer; (2)

Plaintiff's reaction and his body language when he was asked whether he had any weapons or

anything illegal on him was suspicious; (3) Hyland had knowledge from a confidential informant

that Plaintiff often hid drugs in his crotch area; (4) Plaintiff was arrested in a high drug and high

crime area; and (5) Plaintiff was carrying a very large amount of cash and two cell phones, which

based upon experience, is indicative of drug sales. (*Id*. at 45-51.) Sergeant Sutton gave approval

for Officer Hyland and Officer Knapp, another Phoenixville police officer, to conduct a strip

search. (*Id*.)

Plaintiff was initially required to remove his pants and his socks, and he was left sitting

on a bench in his underwear and a white t-shirt. (Video, Phoenixville Mot. Ex. H.) While he

was seated on the bench and before he was required to remove his boxer shorts, Plaintiff

removed drugs from his crotch area inside of his boxer shorts and handed the drugs to Hyland.

(Lear Dep. 55.) After removing the drugs from inside of his boxer shorts, Plaintiff was then

forced to pull down his boxer shorts to his ankles, exposing his buttocks and genitalia. (Video.)

### B.     Procedural History

Plaintiff filed the Complaint in this Court on March 23, 2016. (ECF No. 1.) The

Complaint alleges violations under 42 U.S.C. § 1983 including: malicious prosecution (Count I);

false arrest (Count II); selective enforcement (Count V); illegal search and seizure under the

Fourth Amendment (Count VI); violation of Plaintiff's due process under the Fourteenth Amendment (Count VII); a claim under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) (Count VIII); and conspiracy to deprive Plaintiff of his constitutional rights (Count XI). Plaintiff also alleges claims under Pennsylvania law for malicious prosecution (Count III) and false arrest (Count IV). On June 15, 2016, Defendants Phoenixville Police Department, Borough of Phoenixville, Chief William J. Mossman, Officer Nicholas Heller, and Officer Thomas Hyland filed an Answer to Plaintiff's Complaint. (ECF No. 9.) On August 22, 2016, Defendant Michinock filed an Answer to Plaintiff's Complaint. (ECF No. 17.) On February 16, 2017, Defendant Michinock filed his Motion for Summary Judgment. (Michinock Mot.) On February 17, 2017, Defendants Phoenixville Police Department, Borough of Phoenixville, Chief William J. Mossman, Officer Nicholas Heller, and Officer Thomas Hyland filed their Motion for Summary Judgment. (Phoenixville Mot.) On March 7, 2017, Plaintiff filed a Response to both Motions. (Pl.'s Resp.) That same day, Plaintiff withdrew his *Monell* claim. (Pl.'s Resp. Ex. J.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id.* The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for

summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. DISCUSSION

### A. Malicious Prosecution

Officer Michinock argues that Plaintiff's malicious prosecution claim must fail because Michinock had probable cause to issue the citation, and because he did not issue the citation for any malicious purpose. Plaintiff argues that Michinock lacked an honest or reasonable belief that Plaintiff had in fact been driving on a suspended license. In order for a plaintiff to prevail on a § 1983 claim for malicious prosecution, he must demonstrate that:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in the plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the
plaintiff to justice; and

(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as
a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).  "[P]robable cause is defined in terms and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing a crime."  *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000) (citing *Sharrar v. Felsing*, 128 F.3d 810, 817-18 (3d Cir. 1997)).  "[A] district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to [the plaintiff], reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly."  *Merkle*, 211 F.3d at 788-89 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

Here, Officer Michinock issued a citation to Plaintiff based on Officer Heller's statements and observations.  "Probable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard."  *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997).  "[A]n officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis."  *Id.* (citing *United States v. Hensley*, 469 U.S. 221, 232 (1985)).  "Statements by fellow officers that there is probable cause for an arrest, by themselves, do not provide the 'facts and circumstances' necessary to support a finding of probable cause."  *Vanderklok v. United States*, 140 F. Supp. 3d 373, 382 (E.D. Pa.

2015) (quoting *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)). However, if an officer has reason to believe statements by a credible source, that officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle*, 211 F.3d at 790 n.8; *see also Vanderklok*, 140 F. Supp. 3d at 381 ("An officer is not charged with conducting an independent investigation to verify statements made by a credible eye-witness if those statements provide him with probable cause to arrest.").

Clearly, Heller's statements to Michinock contained "the facts and circumstances necessary" for Michinock to determine that probable cause existed that Plaintiff had driven with a suspended license. Heller told Michinock that he saw Plaintiff at a Wawa store, and that he recognized Plaintiff immediately based on past interactions he had with him. (Incident Report 2, Michinock Mot. Ex. C.) Heller then said that he saw Plaintiff exit the Wawa, enter the driver's seat of a white Chevrolet Impala, and start driving the car. (*Id.*) Heller believed that Plaintiff's license had been suspended. (*Id.*) Heller said that he drove behind Plaintiff and obtained the registration information for the vehicle that Plaintiff was driving. (*Id.*) After obtaining this information from Heller, Michinock verified through the police database that Plaintiff did in fact have a suspended license. Michonock then filed the citation. (Michinock Dep. 23.) The facts that Heller provided to Michinock, and Michinock's verification of Plaintiff's driving status were more than sufficient to establish probable cause to believe that Plaintiff was driving with a suspended license.[5] Accordingly, Plaintiff's malicious prosecution claim must fail.[6]

---

[5] Plaintiff argues that Officer Michinock lacked an honest belief that he had probable cause to issue a citation to Plaintiff. As support, Plaintiff argues that because Michinock issued the citation four days after speaking with Heller, and yet Michinock and Hyland both stated that the citation was issued on the day that Heller and Michinock spoke, this is evidence that Michinock lacked a reasonable belief that Plaintiff actually committed a crime. This argument is unconvincing.

## B.    False Arrest

Plaintiff claims that Defendants violated his Fourth Amendment right to be free from false arrests.  Defendants argue that Plaintiff's false arrest claim is without merit because Officer Hyland arrested Plaintiff on an active and valid bench warrant.  Plaintiff argues that the bench warrant was invalid, and that even assuming that the warrant was valid, Hyland should have permitted Plaintiff to pay the citation fine and then be released.  "To make out either a false arrest or false imprisonment claim, [a plaintiff] need[s] to demonstrate that his arrest was unsupported by probable cause."  *White v. Andrusiak*, 655 F. App'x 87, 90 (3d Cir. 2016) (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).

Here, Hyland arrested Plaintiff pursuant to a bench warrant issued by the court.  In the case of *Johnson v. Provenzano*, 646 F. App'x 279, 281 (3d Cir. 2016), the plaintiff failed to appear for his traffic summons, and a bench warrant for the plaintiff was subsequently issued.  The court noted that "the simple fact of nonappearance for his summons provided probable cause for a bench warrant."  *Id.* (internal quotation marks and citation omitted).  The court held that there was no Fourth Amendment violation because the officer had probable cause to arrest the plaintiff.  *Id.*; *see also Hanks v. Cty. of Del.*, 518 F. Supp. 2d 642, 649 (E.D. Pa. 2007) ("When a defendant is named in a bench warrant, probable cause for arrest exists, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid.").  Here, Hyland arrested Plaintiff pursuant to a bench warrant issued by the court.  Like the plaintiff in *Provenzano*, Plaintiff failed to appear for his traffic summons.

---

[6] Similarly, under Pennsylvania law, a malicious prosecution claim must fail if probable cause existed.  *See, e.g.*, *Strickland v. Univ. of Scranton*, 700 A.2d 979, 984 (Pa. Super. Ct. 1997) ("A showing of probable cause to institute proceedings against a plaintiff establishes an absolute defense against an action for malicious prosecution, which renders immaterial the issue of whether the prosecutor's motive is malicious or otherwise.").  Accordingly, since we find that Defendants had probable cause, Plaintiff's state law claim of malicious prosecution must also fail.

The court then issued a bench warrant for Plaintiff. Hyland had probable cause to arrest Plaintiff pursuant to the bench warrant. Accordingly, Plaintiff's false arrest claim fails.[7]

Plaintiff also argues that Hyland violated his constitutional rights because Hyland did not offer Plaintiff the opportunity to pay the citation fine and costs, and instead arrested Plaintiff and transported him to the police station. Plaintiff cites Pennsylvania Rule of Criminal Procedure 431, which provides that an officer shall "[a]ccept from the defendant a signed guilty plea and the full amount of the fine and costs if stated in the warrant," if the bench warrant relates to an outstating traffic violation. Pa. R. Crim. P. 431. Plaintiff argues that under this rule, Hyland should have permitted Plaintiff to pay the citation fine and be released.

The Third Circuit has held that a violation of the Pennsylvania Rules of Criminal Procedure "do[es] not automatically constitute violations of due process." *Robinson v. Smyth*, 258 F. App'x 469, 471 n.1 (3d Cir. 2007) (citations omitted); *see also Mills v. City of Grand Forks*, 614 F.3d 495, 500 (8th Cir. 2010) ("[A] mere violation of a state law does not give rise to a federal due process violation."). "[A] Fourth Amendment determination cannot turn on the exigencies of the law of a particular state or territory." *Primrose v. Mellott*, 541 F. App'x 177, 181 (3d Cir. 2013) (internal quotation marks and citation omitted). Rather, "the validity of an arrest under state law is at most a factor that a court may consider in assessing the broader question of probable cause." *United States v. Laville*, 480 F.3d 187, 192 (3d Cir. 2007). Here, we have determined that Hyland had probable cause to arrest Plaintiff because he had a valid bench warrant. Rule 431 does not require Hyland to stand on the street corner where he found Plaintiff—in a high crime, high drug area—and try to resolve the matter at that location. Hyland

---

[7] Similarly, under Pennsylvania law, a false arrest claim must fail if an officer has probable cause to arrest the person. *See Renk v. City of Pittsburgh*, 641 A.2d 289, 295 (Pa. 1994) ("A false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so." (citation omitted)). Since we find that Defendants had probable cause, Plaintiff's state law false arrest claim must also fail.

placed Plaintiff in his patrol car and transported him to the police station. This was not a violation of Plaintiff's constitutional rights.[8] Hyland was permitted to transport him to the police station under the circumstances. We reject Plaintiff's constitutional argument.

### C. Selective Enforcement

Plaintiff contends that Defendants illegally targeted him, arrested him, and strip searched him because of his race and because he was a known drug dealer. Defendants argue that Plaintiff's selective enforcement claim must fail because Plaintiff has not submitted any evidence which demonstrates that another similarly situated person was treated differently than he was treated. "The Equal Protection Clause prohibits the 'selective enforcement' of a law based on an unjustifiable standard." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006)). To establish a selective enforcement claim, a plaintiff must demonstrate: "(1) that he was treated differently from other similarly situated individuals, and (2) 'that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right.'" *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

The Third Circuit affirmed the grant of summary judgment against a plaintiff who "failed to point to record evidence that identified a similarly situated individual (or individuals) who was

---

[8] We note that Plaintiff indicates that he had no knowledge of the citation and bench warrant, and he did not indicate a willingness to pay the citation until after he was arrested and transported to the police station. (Lear Dep. 52-53.)

treated differently from him." *Thomas v. Coopersmith*, 663 F. App'x 120, 124 (3d Cir. 2016) (quoting *Hanes v. Zurick*, 578 F.3d 491, 494 (7th Cir. 2009)).  The Circuit emphasizes the importance of identifying similarly situated individuals, rather than pointing to general instances of non-enforcement.  *See Poku v. Himelman*, 448 F. App'x 217, 221 (3d Cir. 2011).  Here, Plaintiff has failed to identify any similarly situated individuals that were treated differently than he was treated.  Plaintiff did establish that Heller has never observed a person committing a traffic violation and then reported that violation to another police department.  (Heller Dep. 42.) However, Heller has done so within his own police department.  (*Id*.)  Plaintiff also established that Michinock has never issued a traffic citation to a person driving with a suspended license when he did not personally stop the driver.  (Michinock Dep. 25.)  However, Michinock has issued citations for other types of traffic offenses that he did not personally observe, but that he was advised about by other officers.  (*Id*. at 24-25.)  Plaintiff's examples are insufficient to establish that other similarly situated persons were treated differently than Plaintiff.  Officer Heller and Michinock's statements do not prove that they have seen people driving with a suspended license, and did nothing to enforce the law.

Furthermore, the record lacks any evidence that Plaintiff may have been targeted because of his race.  "To establish discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."  *United States v. Armstrong,* 517 U.S. 456, 465 (1996).  Plaintiff, an African American, does not make reference to non-African American drivers anywhere in his pleadings, nor does the evidence make any reference to a lack of enforcement against non-African Americans.  Accordingly, Plaintiff's selective enforcement claim must fail.

**D.      Strip Search**

Plaintiff contends that he was subjected to an illegal strip search, in violation of his Fourth Amendment rights.  Defendants argue that Officer Hyland's search of Plaintiff did not constitute a strip search because Plaintiff was not required to remove all of his clothing. Defendants point to the fact that Plaintiff voluntarily removed the drugs from his underwear and handed them to Hyland.  The drugs were not discovered as a result of a search of Plaintiff.  In addition, Defendants argue that even if Hyland had conducted a strip search of Plaintiff, he had reasonable suspicion to do so.  Finally, Defendants argue that even if Hyland did not have reasonable suspicion to strip search Plaintiff, Defendants are entitled to qualified immunity.

*1.      Whether Plaintiff was Strip Searched*

In *Edgerly v. City & Cty. of San Francisco*, the plaintiff alleged that he was subjected to a strip search because he was forced to pull his pants down to his ankles, leaving him in his undergarments.  599 F.3d 946, 958 (9th Cir. 2010).  The plaintiff stated that the police officer put a finger in his boxer shorts and "kind of just looked around."  *Id*.  The Ninth Circuit held that this inspection amounted to a strip search because the officer's actions "would permit a reasonable inference that [the officer] visually inspected [the plaintiff's] buttocks or genitalia."  *Id*.  The Supreme Court has similarly held that an officer's actions qualify as a strip search if the search violates "reasonable societal expectations of personal privacy," regardless of whether the person being searched is forced to remove all of her clothing.  *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 374 (2009).  In *Safford*, the plaintiff was told to pull her underwear away from her body.  *Id*.  The Court held that the "very fact of [the plaintiff's] pulling her underwear away from her body in the presence of the two officials who were able to see her necessarily exposed her breasts and pelvic area to some degree," and thus qualified it as a strip search.  *Id*.

Here, Plaintiff was required to sit in front of two officers in his boxer shorts and undershirt. (Video.) It was only after Plaintiff pulled the drugs from his crotch area and handed them to the officer that he was told to pull his boxer shorts down, exposing his buttocks and genitalia. (Video.) At that point, one of the officers lifted the back of Plaintiff's undershirt, exposing Plaintiff's buttocks more clearly. (Video.) Since the officers were able to see Plaintiff's buttocks and/or genitalia, Defendants' search of Plaintiff constituted a strip search.

2.    *Whether Defendants had Probable Cause*[9]

Defendants argue that even if Officer Hyland did subject Plaintiff to a strip search, the search was legal because Hyland had a reasonable suspicion that Plaintiff was concealing drugs in his crotch area. Plaintiff contends that Hyland needed probable cause to strip search Plaintiff, and that Hyland did not have probable cause.[10] Plaintiff is correct that probable cause is the appropriate standard.

In the case of *Gallagher v. Green*, we determined that "[t]he Third Circuit has never held that a search incident to arrest for a misdemeanor crime, when the arrestee will be released and not placed in an institutional setting, permits strip searches and body cavity searches based on a reasonable suspicion." No. 12-3840, 2016 WL 3213346, at *8 (E.D. Pa. June 10, 2016). In *Doe*

---

[9] "[A] district court may conclude . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to [the plaintiff], reasonably would not support a contrary factual finding." *Sherwood*, 113 F.3d at 401.

[10] To support his argument, Plaintiff refers to Judge Carmody's conclusion in the underlying criminal case, who determined that Hyland did not have probable cause to strip search Plaintiff. Plaintiff argues that the state court holding is "instructive" for our analysis, and argues that we should similarly reject any finding of probable cause. The doctrine of collateral estoppel has no application here. *See Murphy v. Bendig*, 232 F. App'x 150, 152 (3d Cir. 2007) (holding that a federal district court is not collaterally estopped from deciding a Fourth Amendment issue that was addressed in a state court's suppression ruling). We are required to "decide independently the factual and legal questions presented by this litigation," and therefore will conduct an independent analysis to determine if probable cause existed. *Murphy v. Bendig*, No. 06-02355, 2006 WL 2709378, at *2 (E.D. Pa. Sept. 19, 2006).

*v. Groody*, the Third Circuit held that "[a] non-protective search must normally be supported by probable cause, and with certain exceptions, must be authorized by a warrant." 361 F.3d 232, 238 (3d Cir. 2004). Officer Hyland had probable cause to search Plaintiff if there existed a "fair probability" that Plaintiff was in possession of illegal drugs. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). "Probable cause . . . exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti,* 71 F.3d at 483.

Defendants argue that they reasonably believed that Plaintiff was concealing drugs in his crotch area. They believed this because: (1) Plaintiff had a criminal history of dealing drugs; (2) Hyland had recovered two cell phones and a large amount of cash during his initial search of Plaintiff, which, based on Hyland's experience, is indicative of drug sales; (3) Plaintiff was arrested in a high drug and high crime area; and (4) Hyland had information from a confidential informant that Plaintiff would frequently carry drugs in his crotch area, where an officer would not locate them based on a simple pat-down.[11] We are satisfied, based on all of the information that was available to Officer Hyland at the time of the search, that there existed a "fair probability" that Plaintiff was in possession of illegal drugs. Accordingly, Defendants had probable cause to subject Plaintiff to a strip search, and the strip search was constitutional.[12]

_____

[11] Defendants also argue that when Hyland asked Plaintiff if he was in possession of any weapons or illegal contraband, Plaintiff dropped his head and sighed. However, this fact is disputed. Plaintiff stated that when Hyland asked that question, he responded "no." (Lear Dep. 47.) Therefore, we will not consider this in our probable cause analysis.

[12] We note that Plaintiff was not required to pull down his boxer shorts until after he pulled the drugs out of his crotch area and gave them to the officer. Plaintiff stated that he only removed the drugs from his boxer shorts because Hyland was "about to go in there." (Lear Dep. 55.) Plaintiff stated that he took the drugs out from his boxer shorts and handed them to Hyland because he would rather give the drugs to the officers than be forced to stand naked in front of them. (*Id.*) Since Hyland clearly had probable cause to strip search Plaintiff before Plaintiff

### 3. Qualified Immunity

Even if one were to somehow conclude that Officer Hyland did not have probable cause to search Plaintiff, Defendants would nevertheless be entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation and internal quotation marks omitted). "While . . . case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "[I]mmunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*; *see also Orsatti*, 71 F.3d at 484 (noting that "the qualified immunity doctrine gives ample room for mistaken judgments" (citation and internal quotation marks omitted)). "First, we must determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all. Only if he has should we proceed to determine whether that right was clearly established at the time of the alleged violation." *Russo*, 212 F.3d at 786 (internal quotation marks and citations omitted). The Supreme Court noted that it has been necessary for it to reverse federal courts in qualified immunity cases because "qualified immunity is important to society as a whole, and because . . . qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *White*, 137 S. Ct. at 551 (citations and internal quotation marks omitted).

Here, we find that Plaintiff has not established the deprivation of a constitutional right. We are satisfied that Officer Hyland reasonably believed that he had probable cause to arrest Plaintiff and to strip search Plaintiff, given the facts and information available to him. "A police officer may be liable for civil damages for an arrest if no reasonable competent officer would

---

removed the drugs from his crotch area, and certainly after he removed the drugs from his crotch area, the search was lawful regardless of whether Plaintiff felt compelled to remove the drugs.

conclude that probable cause exists." *Russo*, 212 F.3d at 789-90 (citation and internal quotation marks omitted); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[I]f officers of reasonable competence could disagree on [the probable cause issue], immunity should be recognized."). Considering Plaintiff's prior criminal record as a drug dealer, the cash and cell phones that he was carrying, the fact that Plaintiff was arrested in a high drug area, and the fact that Plaintiff was known to carry drugs in his crotch area, a reasonable officer could believe that there was a fair probability that Plaintiff was in possession of illegal drugs.[13] Since a reasonable officer could have concluded that probable cause existed to strip search Plaintiff, Defendants would be entitled to qualified immunity. Accordingly, even if one were to conclude that probable cause did not exist to strip search Plaintiff, Defendants would nevertheless be entitled to qualified immunity, and Plaintiff's claim would fail.

### E.      Due Process Violation

Plaintiff claims that his Fourteenth Amendment due process rights were violated because Defendants failed to provide Plaintiff with notice of the traffic citation, the bench warrant, "or any other legal process." (Pl.'s Resp. 11.) Plaintiff argues that Defendants purposefully failed to notify Plaintiff in order to arrest him and subject him to a strip search. Plaintiff also argues that the bench warrant was unconstitutionally obtained.

In order for Plaintiff to prevail on a § 1983 claim for deprivation of his procedural due process rights, he must prove that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citations and internal quotation marks omitted).

---

[13] Moreover, as noted above, the actual strip search by the officers did not occur until after Plaintiff had produced the drugs from his crotch area.

"Fundamentally, procedural due process requires notice and an opportunity to be heard."

*Mancini v. Northampton Cty.*, 836 F.3d 308, 315 (3d Cir. 2016) (citing *Mathews v. Eldridge*, 424

U.S. 319, 333, 348 (1976)); *see also Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) ("At

the core of procedural due process jurisprudence is the right to advance notice of significant

deprivations of liberty or property and to a meaningful opportunity to be heard.").

Plaintiff has offered no evidence and no authority to establish that Defendants were

responsible for sending Plaintiff notice of the hearing, which ultimately led to the issuance of the

bench warrant. Rather, the docket for the Magisterial District Court states that the court filed

Plaintiff's traffic citation on April 15, 2014, and subsequently issued a certified summons to

Plaintiff on April 16, 2014. (Traffic Docket 3.) The certified summons was then returned as

undeliverable on April 28, 2014. (*Id.*)

In *Provenzano*, the plaintiff argued that the municipal court did not follow the appropriate

rules for service of process. 646 F. App'x at 282. The plaintiff in that case blamed the improper

service on the defendant police officer who, plaintiff argued, was responsible for informing the

court of the proper service method. *Id.* The Third Circuit rejected this argument, finding that the

police officer could not be liable for any constitutional violation under § 1983 because "[a] §

1983 claim requires that the state actor was the proximate cause of the plaintiff's harm." *Id.*

(citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). The court noted that "the record is

silent regarding [the officer's] communications with the [municipal] court about [the plaintiff's]

summons," and that there was no evidence which suggested that the municipal court issued the

bench warrant as a result of the officer's deception. *Id.* The court held that the proximate cause

requirement was not met because "[w]here the judicial officer has not been deceived 'but fails to

properly apply the governing law and procedures, such error must be held to be a superseding

cause, breaking the chain of causation for purposes of § 1983.'"  *Id*. (quoting *Egervary*, 366 F.3d at 250-51).  In addition, the court held that "even if a broken duty by [the officer] could overcome the court's intervening action, [the plaintiff] has not alleged anything more than negligence on [the officer's] part."  *Id*. at 282-83.

In this case, there is no evidence that Officer Michinock or Officer Heller purposefully caused the court to provide inadequate notification to Plaintiff, or communicated with the court in an effort to deprive Plaintiff of his due process rights.  Officer Michinock listed Plaintiff's address as 800 Kimberton Road, P.O. Box 674, Phoenixville, PA 19460 in the incident traffic report.  (Michinock Dep. 31.)  Michinock got this address from the PennDOT records, as is standard practice.  (*Id*.)  Once Michinock had written up the citation and incident report, it was taken to the Magistrate Court and processed from there.  (*Id*. at 36.)  Once the citation is taken to the court for processing, "they deal with everything from there on."  (*Id*.)  Moreover, Heller was not responsible for mailing the traffic citation to Plaintiff, nor was he responsible for notifying Plaintiff of the hearing.  (*Id*. at 60-61.)  The Magistrate Court is responsible for sending notice for a hearing.  (*Id*. at 61.)  Plaintiff has provided no evidence that the actions of Defendants caused the court to fail to notify Plaintiff of the hearing, which led to the bench warrant, and ultimately Plaintiff's arrest and strip search.  Accordingly, Plaintiff's due process claim fails.

## F.     Conspiracy

Plaintiff argues that the officers of the Phoenixville Police Department disliked Plaintiff because he was a known drug dealer, and therefore conspired to issue the citation and conjure up the bench warrant in order to arrest him and subject him to a strip search.  Defendants argue that Plaintiff's conspiracy claim must fail because Plaintiff's constitutional rights were not violated, and also because Plaintiff has offered no evidence to support his allegations.

"To demonstrate the existence of a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (citation and internal quotation marks omitted); *see also Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (noting that in order to establish a conspiracy claim under § 1983, a plaintiff must prove "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." (citation and internal quotation marks omitted)).  "To prevail on a conspiracy claim, the plaintiff must present evidence of an agreement—the sine qua non of a conspiracy—as it is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Savage v. Judge*, 644 F. Supp. 2d 550, 561 (E.D. Pa. 2009) (quoting *Eichelman v. Lancaster County*, 510 F. Supp. 2d 377, 392-393 (E.D. Pa. 2007)); *see also Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("[I]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." (citation and internal quotation marks omitted)).

While there is evidence that Defendants spoke with one another regarding the citation and bench warrant, this evidence does not prove that Defendants agreed to deprive Plaintiff of his constitutional rights.  Officer Heller informed Officer Michinock that he had observed Plaintiff driving with a suspended license.  Heller stated that he had no conversations with Michinock in order to plan a way to cite Plaintiff for a traffic violation.  (Heller Dep. 65.) Rather, Heller reported Plaintiff's violation to Michinock because it was his duty to report the incident, and because Plaintiff is the kind of person who could cause a traffic collision and fail to

report the accident. (*Id*. at 65-66.) After informing Michinock of what he observed, Heller did not check on the status of the citation, nor did he attempt to arrest Plaintiff after the bench warrant was issued. (Heller Dep. 43, 48.) Moreover, Michinock never spoke about Plaintiff with any other police officer following the hearing. (Michinock Dep. 42.)[14]

After the hearing, Heller went to the Phoenixville police station to report for duty, and told the other officers on duty about the bench warrant. (Heller. Dep. 47-48.) This is common practice, and officers frequently inform one another of active bench warrants so that they can keep an eye out for certain individuals. (*Id*. at 62-63.) Officer Hyland was not involved in issuing the citation to Plaintiff. (Hyland Dep. 52.) Rather, Heller informed Hyland of the traffic citation and of the bench warrant. (*Id*. at 28.) Prior to arresting Plaintiff, Hyland never had any conversations about Plaintiff with Michinock. Hyland did not speak with anyone at the Phoenixville Police Department in order to plan or figure out how to go about arresting Plaintiff. (*Id*. at 55.) While there is evidence that Defendants viewed Plaintiff as a disrespectful person and a known drug dealer (*see e.g.*, Heller Dep. 58), there is no evidence that Defendants conspired to violate Plaintiff's constitutional rights. Plaintiff's argument that Defendants engaged in a grand conspiracy, the purpose of which was to arrest and search Plaintiff, is not based upon facts. It is based upon sheer speculation.

---

[14] Prior to the hearing, Heller and Michinock had a conversation regarding whether Plaintiff would "show up" to the hearing. (Heller Dep. 46.) Based on this alone, we cannot infer that Defendants sought to stop Plaintiff from making an appearance at the hearing, in order to "conjure up" a bench warrant.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment will be granted, and judgment will be entered in favor of Defendants and against Plaintiff.

An appropriate Order follows.

BY THE COURT:


*/s/ R. Barclay Surrick*
**U.S. District Judge**